# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3541

_____

United States of America

*Plaintiff - Appellee*

v.

Ivory Mosby, also known as Rafiq Zareef Muhaymin

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: May 17, 2013
Filed: June 28, 2013

_____

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

Ivory Mosby was convicted of being a felon in possession of ammunition and sentenced to fifteen years of imprisonment and five years of supervised release. Although Mosby's prison sentence ended in September 2007, he remained in federal custody for some three additional years awaiting a hearing in his civil commitment proceeding. Mosby's civil commitment proceeding was later dismissed, and in

November 2010 he was released under supervision. In October 2012 Mosby moved for termination of his supervised release, arguing that his five year term of supervised release had already expired as a matter of law, or alternatively that equitable considerations favored termination. The district court[1] denied his motion, and Mosby appeals. We affirm.

## I.

Mosby[2] has a lengthy criminal record. As a juvenile he was arrested on several occasions for offenses such as grand larceny, petty larceny, breaking and entering, and theft of property. In 1979, when he was 18 years old, Mosby was convicted of burglarizing three different businesses. Less than a month after being released on parole, Mosby was arrested for three more burglaries. During the next three years he was also convicted of second degree battery, two assaults, theft, attempted escape, and four disorderly conduct charges. Then in 1985 Mosby was convicted of first degree attempted murder and first degree criminal sexual assault for raping a University of Minnesota graduate student while beating her with a pipe, causing both short and long term injuries.

In the summer of 1994, less than a year after being released on parole following his attempted murder and sexual assault convictions, Mosby was linked to the burglary of a suburban Minneapolis business. Law enforcement officers searched Mosby's house and found 89 rounds of .44 magnum ammunition. Although Mosby was soon located driving a stolen vehicle, he refused to stop and instead led police

---

[1] The Honorable Michael J. Davis, Chief Judge, United States District Court for the District of Minnesota.

[2] Although Mosby legally changed his name to Rafiq Zareef Muhaymin in 1993, our prior cases and the parties here refer to him by his original name. For consistency, we do so as well.

on a high speed chase. At one point Mosby aimed a loaded handheld crossbow at an officer in pursuit. Mosby was eventually apprehended, and the crossbow and a .22 caliber starter pistol were found in his vehicle. Mosby was charged in state court with being a felon in possession of a firearm based on the starter pistol found in his vehicle.

That state charge was dropped after Mosby was indicted by a federal grand jury for being a felon in possession of ammunition based on the .44 magnum ammunition found in his house. Following a three day trial, the jury convicted him of violating 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Mosby moved for a judgment of acquittal, arguing that the government had failed to prove that the ammunition cartridges were "in or affecting" interstate commerce because they had been manufactured and possessed only within Minnesota. The district court granted Mosby's motion, but we reversed, United States v. Mosby, 60 F.3d 454, 457 (8th Cir. 1995), holding that the interstate requirement of § 922(g)(1) had been satisfied because "[a]t least some of the[] components" of the ammunition had been manufactured in other states. Id. On remand, the district court determined that Mosby was subject to a fifteen year mandatory minimum based on his criminal history and sentenced him to fifteen years of imprisonment and five years of supervised release. Mosby appealed his conviction on various grounds, and we affirmed. United States v. Mosby, 101 F.3d 1278, 1279 (8th Cir. 1996).

Shortly before Mosby's prison sentence ended on September 14, 2007, the United States filed an 18 U.S.C. § 4248 certificate in the Eastern District of North Carolina where Mosby was in custody. The certificate sought to have Mosby civilly committed as a sexually dangerous person, and his release from federal custody was stayed pending its resolution. See 18 U.S.C. § 4248(a). All such proceedings in the Eastern District of North Carolina were held in abeyance in early 2008 pending a review of the constitutionality of § 4248. Mosby then filed a petition for writ of error coram nobis in the District of Minnesota. The district court denied Mosby's petition,

and we summarily affirmed. United States v. Mosby, No. 08-3618 (8th Cir. Aug. 27, 2009). Thereafter, the Supreme Court concluded that 18 U.S.C. § 4248 is a constitutional exercise of congressional power under the Necessary and Proper Clause. United States v. Comstock, 130 S. Ct. 1949, 1965 (2010).

In October 2010, before any ruling by the district court on Mosby's § 4248 commitment proceeding, he and the United States agreed to a joint stipulation. The prosecution agreed to dismiss Mosby's § 4248 case and release him from custody within 24 hours. Mosby in turn agreed to dismiss three habeas actions that he had filed while in custody. The joint stipulation stated that Mosby's term of supervised release would "be deemed to have begun as of the date of his actual release from custody." On October 15, 2010 Mosby was released from Bureau of Prisons (BOP) custody to the United States Marshals Service, and on November 15, 2010 he was released to a halfway house in Minnesota.

During his supervised release Mosby's transition into the community has been largely positive. He completed a job training program at Goodwill Easter Seals in St. Paul and earned forklift and computer work certificates. Mosby has also worked for the Minnesota Twins as a concessionaire at Target Field, for the Goodwill Easter Seals, and for a local waste company. He was one of the Goodwill Easter Seals participants of the year 2011 and was featured in a video at its 2012 awards ceremony. Mosby has been able to find stable housing, and he has not violated any conditions of his supervised release or failed any drug test. At the request of his probation officer Mosby has also spoken to at risk juveniles in Minneapolis about his experience in the criminal justice system.

In October 2012 Mosby moved the district court for termination of his supervised release. He argued that his supervised release had commenced in September 2007 as a matter of law and that his five year term had thus ended in September 2012. Mosby alternatively claimed that equitable considerations favored

-4-

termination because of his "three years in civil detention after his term of imprisonment was completed" and his "positive transition to life outside of incarceration." The district court summarily denied his motion, stating in full: "Defendant filed Motion for Termination of Supervised Release [Doc. #161]. IT IS HEREBY ORDERED that the Motion to Request Termination of Supervised Release is DENIED." Mosby appeals.

## II.

### A.

Mosby first contends that his supervised release term began as a matter of law in September 2007, notwithstanding the fact that he remained in federal custody for some three years thereafter.[3] He bases this argument on the "interaction and operation" of two statutes: 18 U.S.C. § 3624, which applies to the release of prisoners, and 18 U.S.C. § 4248, which applies to the civil commitment of sexually dangerous persons. We review questions of statutory interpretation de novo. United States v. House, 501 F.3d 928, 929 (8th Cir. 2007).

The language that controls the issue in this case is found in 18 U.S.C. § 3624(e). That statute provides in relevant part:

> A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions

---

[3] Although Mosby's joint stipulation deemed his supervised release to begin on "the date of his actual release from custody," the parties now agree that he can bring this claim since it involves the district court's jurisdiction to supervise him under 18 U.S.C. § 3583. See United States v. Hacker, 450 F.3d 808, 814 n.4 (8th Cir. 2006).

specified by the sentencing court. <u>The term of supervised release commences on the day the person is released from imprisonment</u> and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release. A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days.

18 U.S.C. § 3624(e) (emphasis added). We are concerned here with the second sentence in § 3624(e), which is referred to as the commencement provision.

There is no dispute that Mosby's prison term ended on September 14, 2007. He would ordinarily have been freed from BOP custody at that time and his supervised release would have commenced. Just before the end of his prison term, however, the government filed a § 4248 certificate seeking to have him civilly committed as a sexually dangerous person. Under § 4248, such a certificate "shall stay the release of the person pending completion of procedures contained in this section." 18 U.S.C. § 4248(a). Mosby therefore remained in federal custody, and he was ultimately released on November 15, 2010.

Mosby nonetheless argues that his term of supervised release began on September 14, 2007 because the commencement provision of § 3624(e) states that supervised release begins when the individual is released from "imprisonment." Mosby stresses that from September 2007 onward he was held in civil detention, pending the outcome of his § 4248 proceeding, rather than in imprisonment. He asserts that civil detention necessarily differs from imprisonment because the former is not punitive, citing the Supreme Court decisions in <u>Kansas v. Hendricks</u>, 521 U.S. 346, 361–63 (1997), and <u>United States v. Comstock</u>, 130 S. Ct. 1949, 1954, 1965 (2010). Mosby also claims that the rule of lenity counsels in favor of our adopting

his position. See United States v. Santos, 553 U.S. 507, 514 (2008) (plurality opinion).

The Supreme Court interpreted the phrase "released from imprisonment" in § 3624(e) in United States v. Johnson, 529 U.S. 53 (2000). In that case, Johnson had been sentenced to consecutive prison terms totaling 171 months, to be followed by three years of supervised release. Id. at 55. Two of Johnson's convictions were later vacated, and he was resentenced to 51 months imprisonment. By that point, however, Johnson had already served more than 51 months in prison, and he asked to have his supervised release term reduced accordingly. Id. at 55–56. He argued that his supervised release had begun as a matter of law when his lawful term of imprisonment had expired. Id.

A unanimous Supreme Court ruled against Johnson, holding that an individual is "released from imprisonment" within the meaning of the commencement provision of § 3624(e) only after being "freed from confinement." Id. at 57. In other words, "[s]upervised release does not run while an individual remains in" federal custody. Id. The Court explained that while "[i]t is true the prison term and the release term are related, for the latter cannot begin until the former expires. Though interrelated, the terms are not interchangeable. . . . Supervised release has no statutory function until confinement ends." Id. at 58–59.

Under § 3624(e) Mosby's supervised release "commence[d] on the day [he was] released from imprisonment," or as the Supreme Court made clear in Johnson, the day that he was "freed from confinement," 529 U.S. at 57. Thus, Mosby's term of supervised release did not begin until he was "freed from confinement" on November 15, 2010. See id. It would be contrary to the plain language of § 3624(e) and the Supreme Court's holding in Johnson for us to adopt Mosby's position that his term of supervised release began before he was released from federal custody.

-7-

This conclusion is consistent with the distinct and important purposes of supervised release. As the Supreme Court explained in Johnson: "Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." 529 U.S. at 59. To start a term of supervised release while an individual is still physically confined by federal authorities would frustrate one of its key purposes which is to help individuals as they transition into the community. Under Mosby's interpretation of § 3624(e), it would even be possible for an individual to begin and end his entire term of supervised release without leaving federal custody. That would be entirely inconsistent with the congressional purpose. Further, in his motion before the district court and his appellate brief Mosby acknowledges the benefit he has received while on supervised release.

Mosby argues that Johnson is not controlling because that case involved a defendant whose release was delayed due to an erroneous prison sentence, while Mosby's release was stayed due to the government's initiation of a § 4248 civil commitment proceeding. Mosby contends that we should adopt the position taken by a majority of a Ninth Circuit panel in United States v. Turner, 689 F.3d 1117 (9th Cir. 2012), and its companion case United States v. Bolander, 487 F. App'x 349 (9th Cir. 2012). In those cases, two detainees had completed their respective prison sentences like Mosby and were then civilly detained pending § 4248 commitment proceedings. Turner, 689 F.3d at 1119; Bolander, 487 F. App'x at 350. The panel majority distinguished Johnson as not having addressed "the situation in which a person who has completed a prison sentence is then placed in civil detention." Turner, 689 F.3d at 1124 (emphasis in original). It then relied on the third sentence in § 3624(e) to conclude that the supervised release term for such an individual begins when his prison term ends, id. at 1121–25, citing the rule of lenity, id. at 1125–26. Judge Smith explained in dissent that "[t]he commencement and tolling provisions of 18 U.S.C. § 3624(e) are distinct" and serve different statutory functions. Id. at 1126–27 (Smith, J., dissenting). We agree with the dissent.

Here, the question is whether an individual who has been civilly detained under § 4248 immediately following a prison term has <u>commenced</u> his supervised release. <u>See</u> <u>Turner</u>, 689 F.3d at 1126 (Smith, J., dissenting). As the Supreme Court explained in <u>Johnson</u>, the commencement provision for supervised release in § 3624(e) is unambiguous, and "[a]bsent ambiguity, the rule of lenity is not applicable." 529 U.S. at 59. No language in § 4248 governs the issue before us, nor is any language in that statute ambiguous.

We conclude that under § 3624(e) Mosby's supervised release began as a matter of law on the day that he was "freed from confinement." <u>Johnson</u>, 529 U.S. at 57. Mosby's term of supervised release thus began when he was released from federal custody on November 15, 2010, and it did not expire in September 2012 as Mosby contends.

B.

Mosby alternatively claims that the district court erred in rejecting his equitable arguments for early termination of supervised release. Under 18 U.S.C. § 3583(e), a district court "may, after considering [certain] factors . . . terminate a term of supervised release and discharge the defendant . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." We review for abuse of discretion a district court's denial of a motion to modify the terms of supervised release, <u>United States v. Davies</u>, 380 F.3d 329, 332 (8th Cir. 2004), including a motion for early termination of supervised release under § 3583(e), <u>United States v. Hutchins</u>, 310 F. App'x 51, 51 (8th Cir. 2009) (unpublished per curiam). We afford the district court "broad discretion" in this area, <u>Davies</u>, 380 F.3d at 332, recognizing that it is in the best position to evaluate the circumstances of each individual defendant.

In this case the district court summarily denied Mosby's motion, rejecting his equitable arguments without comment. Mosby argues that early termination of his supervised release is appropriate because he spent some three years in civil detention where his "freedom was greatly curtailed." Mosby emphasizes his subsequent positive transition into the community, having found stable housing and steady work since his release. He also points to Minnesota's sex offender registration system, under which he will be monitored for the rest of his life. Mosby asserts that at minimum we should remand for the district court to explain its reasoning for denying his motion.

We conclude that the district court did not abuse its discretion. It had presided over Mosby's trial and was well acquainted with his extensive criminal record, which includes convictions for violent offenses such as first degree attempted murder and first degree sexual assault. The district court was aware of the time that Mosby had been detained related to his § 4248 proceeding, his subsequent positive transition to life outside of custody, and his status as a sex offender subjecting him to state monitoring. Neither 18 U.S.C. § 3583(e) nor relevant case law required the district court to explain its denial of early termination of supervised release. We see no abuse of discretion in its summary denial of Mosby's motion.

III.

Accordingly, we affirm the district court order denying Mosby's motion for termination of supervised release.

_____