PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-6186

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

JEFFREY CISSEL NEUHAUSER,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Alexander Williams, Jr., District Judge. (8:99-cr-00189-AW-1)

Argued: January 29, 2014        Decided: March 11, 2014

Before MOTZ, KING, and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge King and Judge Diaz joined.

**ARGUED**: Susan Amelia Hensler, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant. Kristi Noel O'Malley, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee. **ON BRIEF**: James Wyda, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

Shortly before his term of imprisonment on child sex offenses ended, Jeffrey Neuhauser received notification that the Government had certified him as a "sexually dangerous person" under the Adam Walsh Child Protection and Safety Act, 18 U.S.C. § 4248. The certification stayed his release from prison, where he remained confined in civil detention pending the resolution of his status. The district court ultimately concluded that the Government had not proven Neuhauser to be a "sexually dangerous person" and so ordered his release from prison. Neuhauser then moved to terminate the term of supervised release that had been imposed in conjunction with his term of imprisonment. He asserted that his term of supervised release began when his term of imprisonment ended, and thus, his supervised release ran throughout the time he spent in civil detention. The district court denied the motion, holding that Neuhauser's term of supervised release did not begin until he was freed from confinement. For the reasons that follow, we affirm.

I.

In September 1999, Neuhauser pled guilty to one count of interstate travel with intent to engage in sex with a minor and one count of distribution of child pornography. See 18 U.S.C. § 2423(b) and 2252(a)(1). The court sentenced him to 109 months

imprisonment and an additional five years of supervised release. The Bureau of Prisons ("BOP") set a release date of June 6, 2007, and Neuhauser served his time in prison without significant incident.

On May 22, 2007, just two weeks before Neuhauser's scheduled release date, the Government certified him as a "sexually dangerous person" under the Adam Walsh Act. The certification triggered a stay of Neuhauser's discharge until a federal district court could determine whether he met the criteria for civil commitment. See 18 U.S.C. § 4248(a). On June 6, 2007 -- Neuhauser's original release date -- the BOP processed him for Adam Walsh Act "review" and transferred him to a different housing unit within the same federal prison. He remained there for the next four-and-a-half years while constitutional challenges to the Adam Walsh Act were resolved.[1]

---

[1] See Order, United States v. Neuhauser, No. 5:07-HC-2101-BR (E.D.N.C. Jan. 8, 2008) (holding proceedings in abeyance while appellate courts addressed constitutionality of Adam Walsh Act); Order, id. (June 11, 2010) (lifting stay based on Supreme Court's ruling in United States v. Comstock, 560 U.S. 126 (2010)); see also Comstock, 560 U.S. at 130 (upholding the constitutionality of the Adam Walsh Act under Article I); United States v. Timms, 664 F.3d 436, 449 (4th Cir. 2012) (upholding the constitutionality of the Adam Walsh Act under the Equal Protection Clause); United States v. Comstock, 627 F.3d 513, 524-25 (4th Cir. 2010) ("Comstock II") (upholding the constitutionality of the Adam Walsh Act under the Due Process Clause). We note that Neuhauser does not pose any constitutional challenge to his period of civil detention.

On January 19, 2012, after an evidentiary hearing, the district court refused to certify Neuhauser for civil commitment. The court reasoned that although Neuhauser evidenced an interest in adolescent boys, the Government did not demonstrate that his condition qualified as a "mental illness" justifying civil commitment. United States v. Neuhauser, No. 5:07-HC-2101-BO, 2012 WL 174363, at *2 (E.D.N.C. Jan. 20, 2012) (explaining that a pedophilia diagnosis requires the exhibition of an interest in preadolescent boys). On February 3, 2012, the BOP released Neuhauser, and he returned to his Maryland home.

Five months later, on June 6, 2012, Neuhauser moved to terminate his term of supervised release. He argued that his term of supervised release began on the date that his prison sentence ended: June 6, 2007. After that date, he noted, he was no longer serving time in prison pursuant to criminal sanction, but rather he remained in prison pursuant to the operation of a civil statute. Neuhauser maintained that civil detention, unlike criminal confinement, does not constitute "imprisonment." Because federal law specifies that supervision begins on the date of a person's "release[] from imprisonment," he contended that his term of supervised release began when his confinement for Adam Walsh Act review began. See 18 U.S.C. § 3624(e) (emphasis added).

4

The district court disagreed. It credited Neuhauser's argument that a person's term of supervised release begins at the end of his imprisonment. The court reasoned, however, that "release from imprisonment" occurs only when a person is freed from confinement. Because the Government confined Neuhauser until the resolution of his civil-commitment hearing, the district court determined that his supervised release commenced only after that date, i.e., in February 2012, not in June 2007.

Neuhauser noted a timely appeal.[2]

## II.

The sole dispute in this case concerns the date on which Neuhauser's supervised release began. Neuhauser contends that his supervised release began on June 6, 2007, the date on which his prison sentence ended. The Government maintains that Neuhauser's release began on February 3, 2012, the date on which

---

[2] Although not directly at issue here, our holding affects the propriety of the district court's July 2013 order sentencing Neuhauser to a second term of imprisonment and supervised release. The district court found that Neuhauser had violated the conditions of his original term of supervised release in March 2013. See Judgment, United States v. Neuhauser, No. 8:99-cr-00189-AW-1 (D. Md. July 10, 2013). The court based this second sentence on its finding that Neuhauser was under supervision at the time of the March 2013 incident. If we held that Neuhauser's original term of supervised release commenced in June 2007, not in February 2012, however, his original term of supervised release would have expired before the March 2013 incident, and thus, Neuhauser's infraction could not form the basis of the second sentence.

5

his actual confinement ended. The parties thus dispute a question of law, which we consider de novo. Holland v. Pardee Coal Co., 269 F.3d 424, 430 (4th Cir. 2001).

A.

This question requires us to determine whether the time a person spends in prison awaiting the resolution of his status pursuant to the Adam Walsh Act affects the date on which his supervised release begins, as determined by 18 U.S.C. § 3624. Under § 3624, a defendant's "term of supervised release commences on the day the person is released from imprisonment." 18 U.S.C. § 3624(e). Ordinarily, the BOP releases a prisoner from confinement upon the expiration of his criminal sentence. See id. § 3624(a). But under certain conditions, a defendant's release from confinement will be stayed for some time beyond that date. In particular, under § 4248(a) of the Adam Walsh Act, the Government's certification of a prisoner as a "sexually dangerous person . . . stay[s] [his] release" pending the outcome of a civil-commitment proceeding. 18 U.S.C. § 4248(a). A prisoner so confined remains in BOP custody until a district court determines whether he satisfies the requirements for civil commitment. Id.

There is no dispute that Neuhauser remained confined pursuant to § 4248 beyond the expiration of his prison sentence. The question is whether his confinement beyond his scheduled

6

release date qualifies as "imprisonment" under § 3624. Neuhauser stresses that from June 2007 onward, he was held in civil detention pending the outcome of a hearing. This was not imprisonment, he argues, because the term "imprisonment" refers only to incarceration imposed as a punishment for a crime. In view of the fact that § 4248 is not punitive in nature, see Timms, 664 F.3d at 456, he maintains that his Adam Walsh Act confinement lacked the requisite indicia of punishment to count as "imprisonment" under § 3624.

Like any issue of statutory interpretation, we begin our analysis with the statute's plain text. Broughman v. Carter, 624 F.3d 670, 675 (4th Cir. 2010). The ordinary meaning of "imprisonment" evinces no necessary link to criminal punishment. On the contrary, to "imprison" someone is simply to "put [a person] in prison." Webster's New Collegiate Dictionary 572 (1979). As Judge Chasanow has recently noted, numerous dictionaries confirm that the term "imprisonment" "focuses on the nature of . . . confinement," not the reason for its imposition. Tobey v. United States, 794 F. Supp. 2d 594, 598 (D. Md. 2011) (quoting Black's Law Dictionary (2009) (defining "imprisonment" as "the state of being confined; a period of confinement"); Oxford English Dictionary (2d ed. 1989) (defining "imprisonment" as "detention in a prison or place of confinement; close or irksome confinement")). Indeed, in other

7

legal contexts, the term "imprisonment" describes something other than a defendant's service of a criminal sentence. See 18 U.S.C. § 3041 (permitting imprisonment before trial).[3]  Thus, we find no support for Neuhauser's argument in the text of § 3624.

Nor does the structure of the statute assist Neuhauser. Section 3624 contains two provisions regulating supervised release:  a provision regulating when supervised release begins and another regulating when supervised release is tolled. See 18 U.S.C. § 3624(e).  According to the statute, a term of

---

[3] Neuhauser notes that persons detained under civil-commitment statutes are not "prisoners" for the purposes of the Prison Litigation Reform Act ("PLRA"). See Michau v. Charleston Cnty., 434 F.3d 725, 727 (4th Cir. 2006).  The PLRA, however, provides no analogy helpful to Neuhauser.  For the PLRA applies only to persons "incarcerated or detained" in a federal facility "who [are] accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law."  28 U.S.C. § 1915A(c) (emphasis added).  The supervised-release statute, by contrast, applies to all "imprisoned" persons.  18 U.S.C. § 3624(e).  The lack of limiting qualification in § 3624 indicates that it has a much broader scope than the PLRA, and thus, cases like Michau are not relevant here.
Neuhauser's reliance on 18 U.S.C. § 3585(b) fails for a similar reason.  That statute provides for a reduction in a person's "term of imprisonment" if the person has spent time in prison "prior to the date [of his] sentence" as a result of, inter alia, "the offense for which the sentence was imposed." Id.  Neuhauser finds it "notable" that this credit does not obtain for periods spent in civil detention.  It is unclear why this is "notable" or what bearing § 3585(b) has on the case at hand, given that both parties agree that Neuhauser remained confined past his "term of imprisonment."  Perhaps Neuhauser intends to suggest that § 3585(b) states a universal definition of "imprisonment," which excludes confinement in civil detention, but nothing in the text of § 3585(b) -- or any other statute -- indicates that this is the case.

8

release begins when a person is "released from imprisonment," while a term of release is tolled when a person "is imprisoned in connection with a conviction." Id. (emphasis added). The distinction between "imprisonment," on the one hand, and "imprisonment in connection with a conviction," on the other, belies Neuhauser's suggestion that "imprisonment" must involve a conviction. If Neuhauser were correct, and "imprisonment" necessarily related to punishment, there would be no need for Congress to qualify the term "imprisonment" in the statute's tolling provision. Under Neuhauser's definition, "imprisonment" would always be "in connection with a conviction," and the inclusion of that phrase in the tolling provision would be entirely unnecessary. To avoid an interpretation of the statute that would "render [its] terms meaningless or superfluous," the word "imprisonment" must mean something broader than detention "in connection with a conviction." See Scott v. United States, 328 F.3d 132, 139 (4th Cir. 2003).

Finally, we note that only a broad definition of "imprisonment" comports with the purpose of § 3624. As we explained in United States v. Buchanan, 638 F.3d 448, 451 (4th Cir. 2011), "[t]he congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful transition from the prison to liberty." See also id. ("Supervised release . . . is a unique method of post-

9

confinement supervision that fulfills rehabilitative ends distinct from those served by incarceration." (quotation marks and citations omitted)).  It is hard to imagine the way in which supervision would aid in a person's transition if he could serve his entire term of supervised release before leaving prison.

## B.

Our analysis accords with that of the Supreme Court in United States v. Johnson, 529 U.S. 53 (2000).  There, the Court determined the date on which a defendant's supervised release commenced in a case in which later appellate precedent required modification of his prison term.  Id. at 54.  Johnson originally received a sentence of nine years imprisonment plus a term of supervised release; the change in the law led to a modified sentence of four years imprisonment plus a term of supervised release.  Id. at 54–55.  Unfortunately, Johnson had already spent six years in prison before receiving the modified sentence.  Id. at 55.  Having served "too much prison time," Johnson argued that his improper imprisonment should be credited toward his term of supervised release.  Id. at 54–55.  He contended that his term of supervised release began on the date that his lawful imprisonment ended, not the date on which the BOP ultimately released him.  Id. at 55–56.

The Supreme Court rejected the argument.  The Court noted that under § 3624, a defendant's supervised release "does not

10

commence until [the] individual 'is released from imprisonment.'" Id. at 57. That phrase, it explained, contemplates a defendant's "freed[om] from confinement." Id. For this reason, "[s]upervised release does not run while an individual remains in the custody of the Bureau of Prisons." Id. After all, the Court explained, "[s]upervised release has no statutory function until confinement ends." Id. at 59.

The Government maintains that the Supreme Court's holding in Johnson is "dispositive" here. Neuhauser argues that the case is clearly distinguishable because Johnson, unlike Neuhauser, conceded the fact of his imprisonment. This difference, he argues, requires us to apply a "fundamentally different analysis" than that employed by the Supreme Court in Johnson, which he claims leads to a "fundamentally different" result.

Neuhauser is correct that Johnson does not strictly control this case. While Johnson freely admitted that he had been "imprisoned," albeit wrongly, for the entire six years of his detention, Neuhauser makes no similar admission. Instead, Neuhauser maintains that he was not "imprisoned" during the last four years of his confinement. Accordingly, Neuhauser presents an argument that Johnson did not make on appeal, i.e., that detention pursuant to a civil statute does not constitute "imprisonment" in any sense of the term.

11

But this new argument does not warrant a "fundamentally different analysis." Rather, Johnson is instructive here in two important respects. First, Johnson reiterates the commonsense meaning of "imprisonment" as "confinement." See Johnson, 529 U.S. at 57 (explaining that to be "released from imprisonment," one must be "freed from confinement"). That the Supreme Court applied this definition so readily to another supervised-release case underscores its relevance here. Second, Johnson emphasizes the importance of construing § 3624 in light of its purpose. As the Johnson Court recognized, supervised release contributes to a defendant's rehabilitation and "transition to community life." See id. at 59. These objectives would be ill served were a defendant to begin his release while living in prison.

Johnson thus lends support to the view that supervised release commences on the date that a person is freed from confinement, irrespective of whether that confinement resulted from a criminal or civil statute. This view also accords with holdings from other courts that have recently held that supervised release does not begin until a § 4248 detainee is released from confinement. United States v. Mosby, 719 F.3d 925, 930 (8th Cir. 2013) (holding as a matter of law that § 4248 detainee's supervised release commences on the day he was "freed from confinement"), cert. denied, 134 S. Ct. 905 (2014); Tobey, 794 F. Supp. 2d at 602 (same).

12

We recognize that in United States v. Turner, 689 F.3d 1117, 1126 (9th Cir. 2012), the Ninth Circuit reached a different result. There, a divided panel held that when the Government's institution of a civil-commitment proceeding stays a prisoner's release from confinement, his term of supervised release begins on the date that he was due to be discharged. Id. The majority reasoned that because § 3624 suspends a term of supervised release when a defendant is "imprisoned in connection with a conviction," an individual detained pursuant to a civil statute cannot be subject to § 3624's tolling provision. Id. (emphasis added).

The Turner majority, however, conflated the two separate provisions of § 3624: the commencement provision and the tolling provision. See 18 U.S.C. § 3624(e). These statutory provisions work in different ways. See United States v. Ide, 624 F.3d 666, 669 (4th Cir. 2010); see also Tobey, 794 F. Supp. 2d at 600. The commencement provision specifies the date on which supervised release begins, while the tolling provision describes periods of time during which supervised release is suspended. Of course, "[w]hat never begins cannot end." Turner, 689 F.3d at 1127 (Smith, J., dissenting). Thus, a court must first assess whether the defendant's supervised release has begun before it addresses whether his supervised release has been suspended.

13

Turner's conflation is particularly problematic because, as noted above, suspension and commencement are triggered by different events. Although supervised release is suspended when a person is "imprisoned in connection with a conviction," supervised release commences simply when a person is "released from imprisonment." 18 U.S.C. § 3624(e) (emphasis added). Of critical importance here, the commencement provision does not require that imprisonment be "in connection with a conviction." Id. Under the statute's plain language, any imprisonment, regardless of whether it is imposed pursuant to a criminal conviction, prevents supervised release from commencing.

Turner thus falters in light of the plain language of § 3624. The Turner majority's sole justification for permitting supervised release to run during a detainee's civil confinement is that this kind of detention is not "imprisonment in connection with a conviction." Turner, 689 F.3d at 1126.[4] But

_____

[4] Even if the Turner majority were correct in its reliance on this language, its analysis would still be problematic. For a defendant detained pursuant to § 4248 is in fact imprisoned "in connection with a conviction." The Adam Walsh Act allows the Government to commit individuals only if they are presently confined in prison pursuant to a conviction. See 18 U.S.C. § 4248(a). Indeed, in Comstock, 560 U.S. at 134–37, the Supreme Court emphasized that it was § 4248's close relationship to the enforcement of criminal law that provided Congress with the authority to enact the statute. See id. at 149. The Court observed that Congress presumably could not pass a law providing for the civil commitment of any "sexually dangerous person." Id. at 148. Rather, it was the Adam Walsh Act's connection to a
(Continued)

14

§ 3624 does not require that imprisonment be "in connection with a conviction" to stave off the commencement of supervised release. Because Turner does not take account of the distinction between § 3624's commencement and tolling provisions, we cannot endorse its analysis.

III.

For all of these reasons, we hold that a defendant's term of supervised release does not commence while he remains in federal custody pending the resolution of his status under the Adam Walsh Act.[5] The judgment of the district court is therefore

AFFIRMED.

_____

detainee's criminal conviction that rendered the statute constitutional. Id. at 136.

[5] We note that the case at hand does not require us to determine whether a defendant's civil commitment -- as distinguished from the time a defendant serves in prison pending the outcome of his civil-commitment hearing -- constitutes "imprisonment." There may be reasons for treating civil commitment differently. For example, once a person is civilly committed, section 4248 requires the Government to "release [that] person to . . . the State." 18 U.S.C. § 4248(d) (emphasis added). Releasing a prisoner may suffice to end his imprisonment. See Johnson, 529 U.S. at 57. In any event, our disposition in this case does not preordain the outcome of that very different situation.

15