In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3917

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DARRIN MARANDA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 4:99-CR-40087 — **Sara Darrow**, *Judge.*

ARGUED MAY 28, 2014 — DECIDED JULY 31, 2014

Before FLAUM, MANION, and TINDER, *Circuit Judges.*

FLAUM, *Circuit Judge.* This appeal requires us to decide when the clock starts on a criminal defendant's term of supervised release. Ordinarily, the answer is straightforward— supervised release begins once the defendant leaves prison and reenters society. Darrin Maranda's case, however, presents an unusual situation: a defendant who has completed his prison sentence, but who remains in federal custody while he awaits a determination of whether he will be civilly

committed pursuant to the Adam Walsh Child Protection and Safety Act. The government argues that because the Adam Walsh Act stayed Maranda's release pending the outcome of his civil-commitment hearing, his term of supervised release did not begin until these proceedings were resolved in his favor and the stay was lifted. Maranda argues that his term of supervised release began on the date his criminal sentence expired, even though he remained in prison at that time. If Maranda is right, then his term of supervised release was over long before his civil-commitment proceedings ended—and long before he committed the violations of his conditions of release that he's now accused of.

The district court held that Maranda's term of supervised release did not begin until he was actually freed from custody. We agree. Read together, the relevant supervised-release provision, 18 U.S.C. § 3624(e), and the stay-of-release provision in the civil-commitment statute, 18 U.S.C. § 4248(a), establish that Maranda was not "released from imprisonment" while awaiting the outcome of his Adam Walsh Act proceedings. We therefore join two of the three circuits to have addressed this question, *see United States v. Neuhauser*, 745 F.3d 125 (4th Cir. 2014), *petition for cert. filed* (U.S. July 22, 2014) (No. 14-5372); *United States v. Mosby*, 719 F.3d 925 (8th Cir. 2013), *cert. denied*, 134 S. Ct. 905 (2014), and affirm the district court's revocation of Maranda's supervised release.

## I. Background

Darrin Maranda committed his first sex offense in 1994, and he has been in and out of prison ever since. In February 1994, Maranda exposed himself to a six-year-old girl. Four days later, he exposed himself to a female cashier at a drive-through window and attempted to pull her into his car. He

pleaded guilty to state charges of public indecency and was sentenced to home confinement and conditional discharge. Six months later, Maranda molested a six-year-old boy. He pleaded guilty to a state charge of criminal sexual assault and was sentenced to eight years in prison. He was released on parole in May 1998, taken back into custody a few months later due to his failure to gain employment, and then released again in October of that year.

While on parole, Maranda downloaded and stored child pornography on his computer. He was arrested by federal authorities, and in April 2000, he pleaded guilty to one count of receipt and one count of possession of child pornography before the United States District Court for the Central District of Illinois, in the case that is now before us. The district court sentenced him to a total of 40 months' imprisonment and five years of supervised release.

In December 2002, Maranda was released from federal prison and began serving his first term of supervision. However, in January 2005, he was arrested on a state charge of aggravated criminal sexual abuse based on the allegation that he molested the nine-year-old daughter of his then-girlfriend. In June 2005, he pleaded guilty to aggravated domestic battery instead. Maranda's probation officer petitioned the district court to revoke his supervised release based on this state conviction as well as other violations of the conditions of his release; the district court did so in August 2005. The court then sentenced Maranda to another 30 months in prison and two years of supervised release.

Maranda began serving his sentence at the Federal Correctional Institution in Butner, North Carolina ("FCI Butner"). This sentence was set to expire on March 16, 2008. But

on March 10, the government filed a certificate in the United States District Court for the Eastern District of North Carolina stating that Maranda was a "sexually dangerous person" under the Adam Walsh Child Protection and Safety Act of 2006, 18 U.S.C. § 4248, a federal civil-commitment statute that "authorizes the Department of Justice to detain a mentally ill, sexually dangerous federal prisoner beyond the date the prisoner would otherwise be released." *United States v. Comstock*, 560 U.S. 126, 129 (2010). As a result, Maranda's release from prison was automatically stayed pending the outcome of his civil-commitment hearing. 18 U.S.C. § 4248(a) ("A certificate filed under this subsection shall stay the release of the person pending completion of procedures contained in this section."); *see also Comstock*, 560 U.S. at 130 ("When [a certificate] is filed, the statute automatically stays the individual's release from prison … thereby giving the Government an opportunity to prove its claims at a hearing through psychiatric (or other) evidence … .").

The district court did not hold Maranda's civil-commitment hearing until more than four years later.[1] For the court to order Maranda's commitment under the Act, it had to find by clear and convincing evidence that he (1) had previously "engaged or attempted to engage in sexually violent conduct or child molestation," (2) "suffer[ed] from a serious mental illness, abnormality, or disorder," and (3) "as a result of" that mental illness, abnormality, or disorder,

---

[1] The delay was partially caused by the Eastern District of North Carolina's decision to hold the proceedings in abeyance until the Supreme Court ruled on a challenge to the Adam Walsh Act as exceeding Congress's powers under Article I, § 8 of the Constitution. The *Comstock* decision, upholding the Act, was announced in May 2010.

"would have serious difficulty in refraining from sexually violent conduct or child molestation if released." 18 U.S.C. §§ 4247(a)(5)–(6), 4248(d); *Comstock*, 560 U.S. at 130. During questioning at the hearing, Maranda affirmed that if he were released, he would "be subject to very intense supervised release conditions … for a period of two years." When asked whether he intended to comply with those conditions, Maranda responded, "Fully and to completeness." To emphasize the point, his attorney recited eleven of the conditions out loud and asked Maranda whether he would comply with each one. Maranda answered affirmatively to each.

The district court ultimately ruled that Maranda was not a sexually dangerous person subject to commitment under the Act. The court found that Maranda met the first two requirements: (1) he had been convicted in 1994 for criminal sexual assault, and (2) he had been diagnosed with pedophilia and antisocial personality disorder. However, the court concluded that the government failed to prove that Maranda would have serious difficulty refraining from sexually violent conduct or child molestation if released. The court's written opinion showed that in reaching this determination, the court considered Maranda's affirmation that he would be subject to conditions of supervised release for two years—including conditions tailored to Maranda's background as a sex offender—and Maranda's apparent willingness to comply with those conditions. The court also stated that "[w]ere Maranda to be released unconditionally, the court might be persuaded that Maranda poses a significant likelihood of reoffending." Order at 12, *United States v. Maranda*, No. 5:08-HC-2033-H (E.D.N.C. Sept. 6, 2012), ECF No. 58.

On September 6, 2012, the district court entered judgment in favor of Maranda, lifted the stay of release, and ordered Maranda to report to the Central District of Illinois to begin serving his term of supervised release. Pursuant to the government's request, the court once again stayed Maranda's release until the denial of the government's motion to amend the judgment. The district court denied that motion, and Maranda was released from FCI Butner on December 21, 2012.

Maranda returned to Illinois and reported for supervision. Three days later, he began receiving phone calls from another convicted sex offender who he had met at FCI Butner. Over the next couple of months, Maranda had 20 conversations with this inmate, some of which revealed that Maranda had been in contact with another convicted sex offender, as well. These communications were in violation of the condition of Maranda's release that he not associate with any person convicted of a felony without his probation officer's permission. Accordingly, in October 2013, Maranda's probation officer petitioned the district court in the Central District of Illinois to revoke his supervised release for a second time.

Maranda filed a motion to dismiss the petition for lack of jurisdiction. He argued that his term of supervised release began on the day his 30-month sentence of imprisonment ended—that is, March 16, 2008—even though he remained in prison during the pendency of his civil-commitment proceedings. That being the case, Maranda argued, his two-year term of supervised release expired on March 16, 2010, and he was no longer subject to the probation office's supervision when he participated in the phone calls. The government

disputed Maranda's theory, maintaining that his term of su-
pervised release began on the day that he was actually re-
leased from custody. The government also argued that Ma-
randa should be barred from asserting this theory because
he avoided civil commitment only by taking a contrary posi-
tion before the North Carolina district court. By now claim-
ing that his term of supervised release had ended long be-
fore his civil-commitment hearing even took place, the gov-
ernment argued, Maranda was "seeking to whipsaw the two
District Courts."

The district court evaluated the relevant federal statutes
and agreed with the government that the supervised-release
clock did not start until Maranda was actually freed from
prison at the conclusion of his civil-commitment proceed-
ings. (The court did not discuss the government's equitable
argument.) The court then revoked Maranda's supervised
release and sentenced him to credit-for-time-served on the
possession count—Maranda had been in custody again dur-
ing the revocation proceedings—and 26 additional months
of supervised release on both the receipt and possession
counts. Maranda appeals.

## II. Discussion

Maranda argues that the district court lacked jurisdiction
to revoke his supervised release because his term of release
had already run. We review this legal question de novo. *See
United States v. Russell*, 340 F.3d 450, 452 (7th Cir. 2003).

### A. Judicial estoppel

The government argues that we need not reach the merits
because judicial estoppel bars Maranda from claiming that
his term of supervised release expired on March 16, 2010.

*See, e.g.*, *Davis v. Wakelee,* 156 U.S. 680, 689 (1895) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."). In his civil-commitment hearing, Maranda repeatedly affirmed to the district court for the Eastern District of North Carolina that he would be subject to a two-year term of supervised release upon his leaving custody. And that court apparently credited Maranda's representations and relied on them to find that the government had not established a case for Maranda's commitment. But before the district court for the Central District of Illinois, of course, Maranda argued that his period of supervised release was over long before his Adam Walsh Act proceedings ended. Understandably, the government accuses Maranda of "playing 'fast and loose' with the courts" by attempting to "prevail[] twice on opposing theories." *In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 661 (7th Cir. 2010).

However, we cannot decide the case on grounds of judicial estoppel. Maranda's about-face aside, his current argument goes to the district court's subject-matter jurisdiction. If Maranda is right that his term of supervised release expired before he received the unauthorized phone calls, the district court would have no authority to revoke his release and impose a new sentence. *See* 18 U.S.C. § 3583(i) (a sentencing court only has the power to revoke a term of supervised release that has expired if a warrant or summons has been issued on the basis of an allegation of a violation before the term's expiration).

We cannot rely on judicial estoppel to give the district court jurisdiction that it may not otherwise have had. *E.g.*, *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (because "no action of the parties can confer subject-matter jurisdiction upon a federal court … principles of estoppel do not apply"); *Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154, 162–63 (3d Cir. 2013) (federal courts cannot apply judicial estoppel "in a way that would impermissibly expand federal judicial power in violation of Article III"). Indeed, in the Eighth Circuit case presenting the same question as our own, the government agreed that the defendant could raise the argument that his term of supervised release began when his prison sentence expired—notwithstanding the defendant's earlier stipulation that his supervised release would begin only upon his freedom from custody—"since [the defendant's claim] involves the district court's jurisdiction to supervise him under 18 U.S.C. § 3583." *Mosby*, 719 F.3d at 928 n.3.[2] Thus, we will not decide the appeal on this basis.

---

[2] The government seems to make that same concession here, acknowledging—in a footnote—that judicial estoppel cannot cure a jurisdictional deficiency. *See* Appellee's Br. 16 n.3. Yet in the very next sentence, the government maintains that estoppel should nonetheless "preclude [Maranda] from arguing he was released from confinement when his criminal sentence expired." *Id.* We do not understand the government's distinction. Even if we forbade Maranda from advancing that argument before us, we would still have to consider its merit. *See, e.g.*, *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented.").

### B. The merits

We therefore continue to the merits of Maranda's argument that his term of supervised release began on the day his prison sentence expired, rather than on the day he was physically released from custody.

There are two federal statutes relevant to this issue. The first is 18 U.S.C. § 3624, titled "Release of a prisoner." Subsection (a), "Date of Release," instructs (in relevant part):

> A prisoner *shall be released* by the Bureau of Prisons *on the date of the expiration of the prisoner's term of imprisonment*, less any time credited toward the service of the prisoner's sentence as provided in subsection (b).

*Id.* § 3624(a) (emphasis added). The other important subsection for our purposes is (e), "Supervision after release." It holds (again in relevant part):

> A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court. *The term of supervised release commences on the day the person is released from imprisonment* and runs concurrently with any Federal, State, or local term of probation or supervised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release. *A term of supervised release*

> *does not run during any period in which the person*
> *is imprisoned in connection with a conviction for a*
> *Federal, State, or local crime* unless the impris-
> onment is for a period of less than 30 consecu-
> tive days.

*Id.* § 3624(e) (emphasis added). We will often refer to the first italicized portion as § 3624(e)'s "commencement provision"—the phrase that explains when a term of supervised release begins—and the second italicized portion as the "tolling provision"—the phrase that explains what will pause and postpone an ongoing term.

The other relevant statute is 18 U.S.C. § 4248, "Civil commitment of a sexually dangerous person," which codifies the Adam Walsh Act. The important subsection is (a), "Institution of proceedings." It holds:

> In relation to a person who is in the custody of
> the Bureau of Prisons … the Attorney General
> or any individual authorized by the Attorney
> General or the Director of the Bureau of Pris-
> ons may certify that the person is a sexually
> dangerous person, and transmit the certificate
> to the clerk of the court for the district in which
> the person is confined. … The court shall order
> a hearing to determine whether the person is a
> sexually dangerous person. *A certificate filed*
> *under this subsection shall stay the release of the*
> *person pending completion of procedures contained*
> *in this section*.

18 U.S.C. § 4248(a) (emphasis added).

Maranda's statutory argument can be paraphrased as fol-
lows: § 3624(a) instructs that Maranda should have been "re-
leased" from prison on the date of the expiration of his term
of imprisonment. As a result, he was "released from impris-
onment" on that date within the meaning of § 3624(e), which
triggered the commencement of his term of supervised re-
lease.

But Maranda's reading ignores the Adam Walsh Act's
stay-of-release provision in § 4248(a). That provision says
that the government's certifying Maranda as a sexually dan-
gerous person "stay[ed]" his "release"—which, in operation,
meant that Maranda remained in federal prison. When
§ 4248(a) is taken into account, Maranda's position amounts
to an understanding that he was "released from imprison-
ment" during the time he remained at FCI Butner, even
though the government's certificate "stay[ed]" his "release"
under § 4248(a). This interpretation would require us to read
the word "release" in a figurative sense when it is used as a
verb in § 3624(e)—to refer to an abstract concept, not a phys-
ical reality—but read the term literally when it is used as a
noun in § 4248(a)—to refer to Maranda's physical freedom
from confinement. This is a strained understanding, and
there is no indication that Congress intended it.

It makes far more sense to read the phrase "released from
imprisonment" in § 3624(e)'s commencement provision to
refer to the defendant's physical release from confinement.
And in fact, the Supreme Court has already interpreted
§ 3624(e) this way. *See United States v. Johnson*, 529 U.S. 53
(2000). After being convicted of multiple felonies, Johnson
was sentenced to 111 months in prison plus three years of
supervised release; two of his convictions were later vacated,

and his prison sentence was reduced to 51 months. By that time, he had already served more than 80 months. Johnson argued that the time he spent unlawfully imprisoned should count toward his term of supervised release. He theorized that under § 3624(e), his term of supervised release began, by operation of law, on the date his lawful sentence ended, not on the date he was physically released from custody.

The Supreme Court disagreed. Invoking the "ordinary, commonsense meaning" of the word "release," the Court construed § 3624(e)'s phrase "released from imprisonment" to mean "freed from confinement." *Id.* at 57. And the *Johnson* Court was clear that that means the day the prisoner is *actually* freed from confinement: "The phrase 'on the day the person is released' … suggests a strict temporal interpretation, not some fictitious or constructive earlier time." *Id.* "To say respondent was released while still imprisoned," the Court reasoned, "diminishes the concept the word intends to convey." *Id.* Thus, the Court concluded, "[t]he statute's direction is clear and precise. Release takes place on the day the prisoner in fact is freed from confinement." *Id.* at 58; *see also id.* at 57 ("Supervised release does not run while an individual remains in the custody of the Bureau of Prisons.").

Given the different factual contexts, *Johnson* does not squarely control here. That said, we see no reason to interpret § 3624(e)'s commencement provision to mean anything other than how the Supreme Court defined it in *Johnson*: the defendant's actual release from custody, regardless of whether that custody was pursuant to a lawful sentence of imprisonment.

Resisting *Johnson*'s application, Maranda argues that one can only be subject to "imprisonment" if he is being detained

as punishment for a criminal conviction (even one that is later found invalid, as in *Johnson*). And he points out, rightly, that his detention pending the outcome of his Adam Walsh Act hearing was not meant to be punitive. *Cf. Kansas v. Hendricks*, 521 U.S. 346, 361–65 (1997) (evaluating a state civil-commitment statute and finding it non-punitive because the statute did not seek retribution, only incapacitation). Thus, in Maranda's view, because "imprisonment" necessarily means detention as a result of a criminal sentence—and because he was detained from 2008 to 2012 in connection with a civil proceeding—Maranda must have been "released from imprisonment" when his prison sentence ended in 2008.

We do not find this syllogism convincing. First, we are unwilling to accept Maranda's premise that the word "imprisonment" necessarily implies a connection to criminal punishment. "On the contrary, to imprison someone is simply to 'put [a person] in prison.'" *Neuhauser*, 745 F.3d at 128 (citing *Webster's New Collegiate Dictionary* 572 (1979)); *see also id.* (pointing to "numerous dictionaries" that "confirm that the term 'imprisonment' 'focuses on the … nature of confinement, not the reasons for its imposition'" (quoting *Tobey v. United States*, 794 F. Supp. 2d 594, 598 (D. Md. 2011))); *United States v. Goins*, 516 F.3d 416, 422 (6th Cir. 2008) (concluding that "the plain meaning of 'imprison' … includes not only confinements as a result of a conviction, but any time the state detains an individual"); *Garner's Dictionary of Legal Usage* 490 (3d ed. 2011) (explaining that the verbs "jail," "imprison," "incarcerate," "immure," "lock up," and "intern" all "share the sense 'to sequester and confine in a secure place so as to prevent escape'"). And indeed, Congress has used the term elsewhere in the federal criminal code to refer to detentions that are not pursuant to a criminal sen-

tence. *See* 18 U.S.C. § 3041 ("For any offense against the United States, the offender may … be arrested and imprisoned or released [on personal recognizance or bond] for trial … .").

But even granting that the word "imprisonment" *often* connotes a connection to a conviction, Maranda's argument fails in the specific instance of § 3624(e)'s commencement provision. This is because the very next sentence of § 3624(e)—the tolling provision—uses the phrase "imprisonment *in connection with a conviction*." Why would Congress specify this link to a conviction if "imprisonment" necessarily implied it? *See Neuhauser*, 745 F.3d at 128–29 (making this same point). Maranda's understanding therefore runs headlong into the "cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

There is another reason favoring our interpretation: it effects the objectives underlying a sentence of supervised release. *Cf. Johnson*, 529 U.S. at 59 ("While the text of § 3624(e) resolves this case, we observe that our conclusion accords with the statute's purpose and design."). It would serve little purpose for defendants like Maranda to serve a term of supervision while they remain in prison. As the Supreme Court observed in *Johnson*, "[s]upervised release has no statutory function until confinement ends," because this part of the sentence "fulfills rehabilitative ends, distinct from those served by incarceration." *Id.* Many of the standard conditions imposed on a releasee—such as the requirement that

the person not use controlled substances, or possess a fire-arm—are unnecessary if the person is locked up. And as the government points out, some of the conditions of Maranda's release would have been virtually impossible for him to comply with while remaining at FCI Butner—for instance, the condition (which formed the basis for his revocation) that he not communicate with another felon.

Maranda's reading would not only render many of the conditions of supervised release useless or nonsensical. It would undermine their very purpose. *Mosby*, 719 F.3d at 929 ("To start a term of supervised release while an individual is still physically confined by federal authorities would frustrate one of its key purposes which is to help individuals as they transition into the community."); *see also* S. Rep. No. 98-225, p. 124 (1983) (stating that "the primary goal [of supervised release] is to ease the defendant's transition into the community after the service of a long prison term … or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release"), *quoted in Johnson*, 529 U.S. at 59. As the district court for the Eastern District of North Carolina reasoned in declining to order Maranda's commitment, conditions of supervised release can serve as a less drastic alternative to commitment in borderline cases. Under Maranda's reading of § 3624 and § 4248, however, if the government certified an individual as a sexually dangerous person but then failed to meet the high threshold for that person's commitment, the government could forfeit the ability to supervise that person's reentry into society. We very much doubt that Congress intended for this consideration to weigh in the government's calculus of

whether to pursue an individual's commitment under the Act.[3]

In interpreting § 3624(e) and § 4248(a) this way, we reach the same result as two other circuits. *See Neuhauser*, 745 F.3d at 131; *Mosby*, 719 F.3d at 930. We part ways, however, with the Ninth Circuit's decision in *United States v. Turner*, 689 F.3d 1117 (9th Cir. 2012). In a divided opinion, the *Turner* court found that a defendant's term of supervised release runs once his sentence of imprisonment expires, even if he is still detained pursuant to § 4248(a) after that time. *Id.* at 1121, 1126. To the Ninth Circuit majority, its result followed from the tolling provision of § 3624(e), which instructs that "[a] term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime." The Ninth Circuit reasoned that a defendant awaiting the result of a civil-commitment hearing under the Adam Walsh Act is not being "imprisoned in connection with a conviction"—instead, he is being detained in connection with a civil proceeding. *Id.* at 1123–24.

We agree with the Fourth and Eighth Circuits and the *Turner* dissent that the Ninth Circuit majority was looking at

---

[3] This is not to diminish the potential for unfairness in this situation. As the district court observed, "[i]t is deeply troubling that the government can unilaterally postpone a prisoner's release indefinitely through the certification mechanism of the Adam Walsh Act. But the problem is with the way the Adam Walsh Act is drafted, in that there appears to be no limit on the duration of a 'stay of release' pending conclusion of civil commitment proceedings—and that issue is not before this Court." *United States v. Maranda*, No. 4:99-CR-40087, 2013 WL 6500138, at *3 (C.D. Ill. Dec. 11, 2013).

the wrong part of § 3624(e). *See Neuhauser*, 745 F.3d at 130; *Mosby*, 719 F.3d at 930; *Turner*, 689 F.3d at 1126–27 (Smith, J., dissenting). Rather than analyzing the circumstances that will *toll* an ongoing term of supervised release, we need to determine the circumstance that causes a term of supervised release to *commence*. After all, "[w]hat never begins cannot end," *Turner*, 689 F.3d at 1127 (Smith, J., dissenting)—and, similarly, what never begins cannot be tolled. Again, § 3624(e) states that "the term of supervised release commences on the day the person is released from imprisonment." Unlike the tolling provision, there is no qualifying language about the imprisonment being "in connection with a conviction." We are thus unpersuaded by *Turner*.[4]

---

[4] We note that the Ninth Circuit had another reason for concluding that an individual's term of supervised release begins at the time his prison sentence expires, even in the Adam Walsh Act context: the government's concession, before that court, that a term of supervised release *would* begin to run if the person was actually civilly committed under the Act (as opposed to being detained while awaiting a determination). *See Turner*, 689 F.3d at 1121–22. In the Ninth Circuit's view, this concession called into question the government's interpretation of the stay-of-release provision in § 4248(a), because that provision instructs that the stay lasts "pending completion of procedures contained in this section"—which include the procedures by which an individual is ultimately discharged from civil commitment if it has been imposed. *Id.* at 1122; *see also* 18 U.S.C. § 4248(a), (e). In the Ninth Circuit's understanding, the government's interpretation required the stay-of-release provision to apply differently to pre-hearing detainees and post-hearing, civilly committed detainees, a result the court found untenable. *Turner*, 689 F.3d at 1122.

The government has not advanced that interpretation in our case, however. And, of course, Maranda was not civilly committed. Thus, "our disposition in this case does not preordain the outcome of that very different situation." *Neuhauser*, 745 F.3d at 131 n.5.

### III. Conclusion

Having found that Maranda was still subject to the conditions of his supervised release at the time he committed the violations he's accused of, we AFFIRM the judgment of the district court.