In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2128

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILLIAM BLOCK,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 08-CR-00900 — **Harry D. Leinenweber**, *Judge.*

ARGUED APRIL 10, 2019 — DECIDED JUNE 20, 2019

Before BAUER, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* In April 2014, William Block completed a 75-month prison term and began a three-year term of supervised release. With a little more than two months left in that term, the Probation Office reported to the district court Block had violated release conditions. Over a year later, the district court conducted a hearing and revoked Block's supervised release, sentencing him to 60 months' imprisonment fol-

lowed by two more years of supervised release. Block appeals, claiming the district court lacked jurisdiction to revoke his supervised release. We agree with Block and vacate the district court's judgment.[1]

## I.

In 2008, a grand jury indicted Block on nine counts of wire fraud relating to an investment scheme he perpetrated from 2002 to 2008. This scheme took many forms, but the basic arrangement was always the same.[2] Block would tell potential investors he had a large amount of money (or in at least one case, gold) coming to him from some outside source (usually somewhere in Africa), and he needed investors to provide large amounts of capital up-front to pay fees and other costs. For example, Block claimed he needed money to pay fees and costs to get $17 million the Liberian government owed him, claimed to need money to pay the fees to bring gold to the United States from an African village, and claimed he needed money to pay fees to obtain a $30-million-plus bequest in New York. Block promised his investors they would receive large and quick returns.

---

[1] On April 15, 2019, we issued an order vacating the district court's judgment and directing Block's immediate release from prison. This opinion explains the basis for that decision.

[2] We draw these details from Block's plea agreement. However, we note Block entered an *Alford* plea, acknowledging the government could prove its case against him but not admitting guilt. *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) ("An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."). Block's basis for denying guilt appears to be his belief his investments were legitimate.

Unsurprisingly, Block did not use the money to bring gold from Africa or pay fees to the Liberian government. He spent it on himself, including paying for a chartered plane and cigars. At least 15 people got caught up with Block, losing a total of over $1.6 million.

In 2013, Block entered an *Alford* plea to eight counts in the indictment. The district court sentenced him to eight concurrent 75-month terms of imprisonment followed by eight concurrent three-year terms of supervised release. As a special condition of supervised release, the district court ordered Block "shall not solicit money for ANY purpose."

Block completed his prison term on April 14, 2014,[3] and entered into supervised release. On December 14, 2015, the Probation Office reported to the district court Block had violated the non-solicitation condition. An individual had attempted to wire approximately $41,000, but the bank, suspecting fraud, did not process the transaction. The FBI interviewed the individual involved, who explained he knew Block's family, believed Block's story about the money, and was in a financial position to take a risk. Given the circumstances, the Probation Office recommended a "hearing of admonishment." The court held that hearing on February 17, 2016. After confirming Block had been reminded of the non-solicitation condition, the court warned him, "If there is any more solicitation of any type or kind, we won't deal with it as easily."

The admonishment did not sink in. About a year after the hearing, on February 3, 2017, the Probation Office reported a

---

[3] Block's stint in prison after his guilty plea was short because he received credit for time served.

further violation of the non-solicitation condition and also maintained the conduct constituted a new federal, state, or local crime. In the report, the Probation Office said Block told an individual Block was entitled to $67.5 million from Liberia, but he needed money for fees. Block promised the individual if he invested with Block, Block would donate millions of dollars to the individual's employer, a Christian school in Chicago. At Block's direction, the individual wrote 10 to 14 checks to Block's son. In total, the individual gave Block $125,900. To make these payments, the individual used personal savings and took out a home-equity line of credit.

This time, the Probation Office proposed no leniency. The statutory maximum prison term for Block on revocation was 24 months per count. 18 U.S.C. § 3583(e)(3). The Probation Office recommended that maximum for all eight counts to which Block had pleaded, amounting to an aggregate sentence of 192 months' imprisonment.

The Probation Office also recognized Block's three-year supervised-release term was set to expire soon, on April 13, 2017. Under 18 U.S.C. § 3583(i), a district court retains jurisdiction to revoke supervised release after the term's expiration only if it issues a warrant or summons before the term expires. To ensure the district court maintained the power to revoke Block's supervised release, the Probation Office recommended the district court issue a summons to Block if it intended to continue the proceedings beyond the expiration date. The probation officer attached a blank summons to her report for that purpose.

On February 14, 2017, the court issued a minute order stating, "as to William Block, Pursuant to the Special Report

dated 2/3/2017 from probation, Status hearing set for 2/28/2017 at 09:00 A.M."

The district court held that hearing as scheduled. Block, his attorney, an Assistant United States Attorney, and a probation officer (but not the one who prepared the report) were present. At the hearing, the government requested Block be detained pending final resolution of the revocation proceedings. The district court agreed and remanded Block to the custody of the United States Marshal. At no point in the hearing did anyone serve Block with a summons.

After that hearing, the district court issued another minute order stating, "as to William Block The [sic] Court orders Defendant Block detained and remanded into the custody of the U.S. Marshal's.until [sic] resolution of of [sic] the rule to show cause. Hearing set for 3/6/2017 at 11:00 a.m."

Block's proceedings then inched along for over 14 months due in part to Block's counsel's request for Block to undergo a competency evaluation. Finally, on May 3, 2018, over a year after the expiration date for Block's supervised-release term, the district court held Block's revocation hearing. Block admitted to soliciting the funds in violation of the non-solicitation condition, but maintained he is actually entitled to the $67.5 million from the Liberian government. The government and the Probation Office recommended the statutory maximum 192-month prison term. The district court thought that was too severe and imposed a 60-month prison term. The district court did so without announcing Block's Guidelines range or explaining how it was stacking the sentences on the eight counts to reach that combined term. At the government's request for an additional period of supervised release, the court also imposed a further 24-month term of supervised

release. Finally, the court imposed the special condition "that [Block] not solicit funds for any purpose whatsoever, even on behalf of his church or whatever, that he not go out and ask people for money."

## II.

Block appeals the revocation judgment. His primary argument is the district court lacked jurisdiction to revoke his term of supervised release because the term expired before the court ordered the revocation. No party raised this issue below, but this type of jurisdictional defect cannot be waived. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). We review *de novo*. *United States v. Maranda*, 761 F.3d 689, 693 (7th Cir. 2014).

The government suggests two reasons why the district court *did* have jurisdiction to revoke Block's supervised release. First, the government maintains the district court retained jurisdiction to revoke because it issued a "summons" or "warrant" as 18 U.S.C. § 3583(i) requires before the term expired. Alternatively, the government argues Block's supervised-release term did not expire on April 13, 2017, because it was tolled from the time he was detained on February 3, 2017.

A. Tolling

We conclude Block's lengthy detention did not toll his supervised-release term, so it expired on April 13, 2017. The tolling provision of 18 U.S.C. § 3624(e) provides, "A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days." The government argues Block's detention was imprisonment for at least thirty

days in connection with a conviction, so it tolled his supervised-release term. But § 3624(e) is inapplicable to a situation like Block's because his detention was itself part of his supervised release.

The statute governing revocation of supervised release, 18 U.S.C. § 3583(e)(3), mandates this conclusion. Section 3583(e)(3) allows a district court to "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release … ." Notice the statute does not say, "the court may revoke a term of supervised release and require the defendant to serve an additional term of imprisonment." Instead, it says the court may "require the defendant to serve in prison *all or part of the term of supervised release*." The Supreme Court has interpreted that language to mean a "term of supervised release [can be] served, in whole or part, in prison." *Johnson*, 529 U.S. at 705 (internal quotation marks omitted). That is, a term of supervised release "continues in some sense after revocation even when part of it is served in prison." *Id.* at 706. When a releasee is imprisoned after his supervised-release term is revoked, he is simply serving supervised release in prison, not a new prison term. Accordingly, § 3624(e)'s tolling provision is inapposite where a releasee is reincarcerated as a result of his original conviction. *Cf. United States v. Cole*, 567 F.3d 110, 114–15 (3d Cir. 2009) ("Congress has provided for [tolling] in only one situation: where the defendant is imprisoned for

more than 30 days for *another* conviction." (emphasis added) (footnote omitted)).[4]

Here, Block was not serving a revocation sentence; he was detained pending resolution of his revocation proceeding. But the principle is the same: there was no other conviction, so he was serving his term of supervised release while detained. Therefore, Block's supervised-release term continued to run and expired on April 13, 2017.

## B. The "Warrant or Summons" Requirement

We also conclude the district court did not retain jurisdiction to revoke Block's supervised-release term after its expiration. In that regard, 18 U.S.C. § 3583(i) provides,

---

[4] This holding is contrary to a statement by the D.C. Circuit in *United States v. Marsh*, 829 F.3d 705 (D.C. Cir. 2016). In that case, the government argued a period of pre-trial detention constituted imprisonment "in connection with a conviction." The D.C. Circuit rejected that argument, concluding § 3624(e)'s use of the present tense ("*is* imprisoned") barred a backward-looking approach. *Id.* at 709–10. In commenting that its "interpretation gives effect to each word in the statute," the court stated, "The phrase 'during any period' clarifies that a term of supervised release is tolled not only during the period of imprisonment initially imposed upon conviction, but also any additional period of imprisonment flowing from a conviction, such as a period imposed for a supervised-release violation." *Id.* at 710. Because this statement "was unnecessary to the outcome of the … case and therefore perhaps not as fully considered as it would have been if it were essential to the outcome," we consider it dictum. *See United States v. Crawley*, 837 F.2d 291, 292–93 (7th Cir. 1988). We also note the Supreme Court recently rejected the D.C. Circuit's reasoning concerning the backward-looking approach. *Mont v. United States*, 139 S. Ct. 1826, 1834 (2019).

> The power of the court to revoke a term of su-
> pervised release for violation of a condition of
> supervised release … extends beyond the expi-
> ration of the term of supervised release … if, be-
> fore its expiration, a warrant or summons has
> been issued on the basis of an allegation of such
> a violation.

On its face, this requires "a valid warrant or summons" to be "issued before the end of the period" if the district court wants to revoke supervised release "after the term of release has ended." *See United States v. Hondras*, 296 F.3d 601, 602 (7th Cir. 2002).

No documents titled "warrant" or "summons" ever issued relating to Block's supervised-release revocation. But the government argues constructive "summonses" and a constructive "warrant" were issued before expiration. The government maintains the two minute orders were effectively summonses because they notified Block of hearings concerning the revocation of his supervised release, and the court's order to detain Block was a warrant because it was an order to take Block into custody. We disagree.

The statute does not define the terms "summons" or "warrant." In deciding what qualifies as a "summons" or "warrant" under § 3583(i), we and other courts have at least suggested there is no need for strict compliance with the Federal Rules of Criminal Procedure or constitutional requirements for arrest warrants. *See Hondras*, 296 F.3d at 602 (noting Criminal Rules 4 and 9 "apply to warrants issued at the start of a criminal case, not to when a person violates his supervised release"); *United States v. Collazo-Castro*, 660 F.3d 516, 523 (1st Cir. 2011) ("We conclude that the Fourth Amendment does

not require a warrant based on an oath or affirmation to re-voke an individual on supervised release."); *United States v. Presley*, 487 F.3d 1346, 1349 (11th Cir. 2007) ("Requirements contained in the Federal Rules of Criminal Procedure that im-pose procedures for taking someone into custody do not nec-essarily apply to people who … are under court supervision as part of a criminal sentence."); *United States v. Garcia-Ava-lino*, 444 F.3d 444, 446 (5th Cir. 2006) (rejecting sworn-facts re-quirement for warrant issued under § 3583(i)). Yet we have commented the rules are "instructive," *Hondras*, 296 F.3d at 602, and no court we are aware of has interpreted § 3583(i) to allow the functional equivalences the government advocates in this case.

When we interpret a statute, "we begin by analyzing the statutory language, 'assum[ing] that the ordinary meaning of that language accurately expresses the legislative purpose.'" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010) (alteration in original) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009)). Barring compelling reasons to look beyond the words of the statute, taking words at their ordi-nary meaning enforces an important principle. All statutes "are instruments of a practical nature, founded on the com-mon business of human life, adapted to common wants, de-signed for common use, and fitted for common understand-ings." *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 69 (2012) (quoting JOSEPH STORY, COMMENTARIES ON THE CONSTITUTION OF THE UNITED STATES 436–37 (1833)).

The ordinary meanings of "summons" and "warrant" are not difficult to divine. Taking "summons" first, the ordinary

meaning of that term concerns something *requiring* the defendant to appear before the court. *See Summons*, BLACK'S LAW DICTIONARY, *supra* ("A writ or process commencing the plaintiff's action and requiring the defendant to appear and answer."); *see also* FED. R. CRIM. P. 4(b)(2) ("A summons … must require the defendant to appear before a magistrate judge at a stated time and place."); *United States v. Merlino*, 785 F.3d 79, 86–87 (3d Cir. 2015) (quoting Black's and concluding an order to issue a summons was not itself a summons "because it [did] not 'requir[e] the defendant to appear and answer'" (second alteration in original)).

Turning to the definition of "warrant," the government is correct that "warrant" can simply refer to an order. *See Warrant*, BLACK'S LAW DICTIONARY, *supra* ("A writ directing or authorizing someone to do an act, esp. one directing a law enforcer to make an arrest, a search, or a seizure."). Here, however, context belies such a generic reading. By coupling "warrant" with "summons," Congress indicated it is using "warrant" to mean a device for instituting proceedings against an individual, not just as a synonym for "order." That is how we ordinarily use that word in criminal law—a warrant is not just any order; it is an order to arrest and bring before the court. *See* FED. R. CRIM. P. 4(b)(1) ("A warrant must … (C) command that the defendant be arrested and brought without unnecessary delay before a magistrate judge or, if none is reasonably available, before a state or local judicial officer … ."); *see also Morissette v. United States*, 342 U.S. 246, 263 (1952) ("[W]here Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts … the meaning its use will convey to the judicial mind unless otherwise instructed."). Anyone giving the statute a natural reading would understand it

to require formal documents notifying the releasee of the pro-
ceedings and requiring him to appear, either under threat of
contempt with a summons or by force with a warrant. There-
fore, a "warrant" for the purposes of § 3583(i) must at least be
an order to apprehend the releasee and bring him before a tri-
bunal.

With the terms defined, we conclude the district court did
not issue either a warrant or a summons concerning Block's
revocation proceedings. The minute orders never directed
Block to appear—they merely announced the hearings would
take place. The order to detain Block did not require anyone
to bring Block before a judge—it was just a direction to detain.

The government implies this interpretation would require
a "meaningless act." The government points out Block had
notice of the revocation proceedings and the charges against
him (his counsel was served with a copy of the probation of-
ficer's report), so he knew what he was facing and what could
happen. The government argues a summons or warrant was
unnecessary, particularly after Block was detained.

That argument is a non-starter. Congress implicitly re-
jected a notice-based approach when it adopted § 3583(i) in
1994. Before § 3583(i)'s enactment, the Circuit Courts "unani-
mously agreed that Congress could not have intended for dis-
trict courts to abruptly lose jurisdiction over already initiated
revocation proceedings," but "varying standards emerged as
to the precise triggering event for continuing jurisdiction."
*Merlino*, 785 F.3d at 83. In this circuit, all we required was the
filing of a petition and notice (if "practicable") to the defend-
ant. *See United States v. Schimmel*, 950 F.2d 432, 436 (7th Cir.
1991) (interpreting the similar statute covering revocation of
probation). Congress left no room for this approach when it

adopted § 3583(i) and expressly required a warrant or a summons to issue before the expiration of the supervised-release term. *See United States v. Janvier*, 599 F.3d 264, 267 (2d Cir. 2010); *Merlino*, 785 F.3d at 87–88.

As a final point, compliance with this condition might sometimes be *pro forma* and practically meaningless (in that the releasee may not need formal notice), but it is not difficult. We agree with the Second Circuit that "[g]iven the ease with which the statute can be satisfied, there is no reason to contemplate strained readings that would blur the bright line provided by Congress." *Janvier*, 599 F.3d at 268. Because no warrant or summons within the meaning of § 3583(i) issued before the expiration of Block's supervised-release term in April 2017, the court lacked jurisdiction to revoke his supervised release in May 2018.

## III.

The district court's judgment is VACATED.