In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3496

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DINO GRECO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 02 CR 126 — **Harry D. Leinenweber**, *Judge.*

ARGUED MAY 29, 2019 — DECIDED SEPTEMBER 12, 2019

Before KANNE, SYKES, and BRENNAN, *Circuit Judges*.

SYKES, *Circuit Judge*. Dino Greco spent more than a decade in prison for blowing up his ex-girlfriend's car with a pipe bomb. In 2015 he began a term of supervised release, and one of the conditions was that he not break federal, state, or local law. He violated that condition three years later when he posted threatening Facebook messages about a second ex-girlfriend despite a court order not to contact her. A federal judge approved a warrant for Greco's arrest, and

seven months later a second judge revoked his supervised release and ordered a new term of imprisonment, to be followed by a new term of supervised release.

On appeal Greco argues that the court lacked jurisdiction to revoke his supervised release because the warrant wasn't supported by probable cause. We disagree. The judge received a report explaining how Greco had broken the terms of his release by violating state law, and that was enough to establish probable cause.

Greco also challenges two of the conditions the court imposed for his second term of supervised release. We remand with respect to both so that the lower court can clarify several terms and further explain its reasoning.

## I. Background

In 2001 Greco threatened to put a pipe bomb in his ex-girlfriend's car if she didn't pay back a debt she owed him. She obtained a protective order, but he put the bomb in her car anyway. The bomb exploded when she opened her driver's side door, injuring her and destroying her car.

Greco pleaded guilty to manufacturing and possessing an unregistered pipe bomb in violation of 26 U.S.C. §§ 5861(d) and 5861(f). At sentencing the government informed the court that this was the third time in ten years Greco had detonated a pipe bomb to intimidate someone who crossed him. The court then sentenced Greco to 180 months in prison. After that term ended on April 13, 2015, Greco was to remain on supervised release until April 12, 2018. One condition of that release was that he would "not commit another federal, state or local crime."

Greco began dating a different woman during his supervised release, but they soon broke up. When Greco started sending her threatening messages, she too obtained a protective order, which prohibited him from contacting her, directly or indirectly. Rather than stop, he created a Facebook account under a fake name and continued to post threatening messages. Although he didn't send the messages directly to the ex-girlfriend, he did notify two of her friends to make sure she got the message. The posts included graphic sexual references and threats of violence against the ex-girlfriend and her family. The most concerning were several thinly veiled threats to blow up her house.

On March 8, 2018, the U.S. Probation Office submitted a report to the district court informing it of the ex-girlfriend's protective order. Later that same day, the Schaumburg Police Department arrested Greco for violating the order. The Probation Office says it submitted another report the following day, March 9, telling the court about the arrest and requesting a warrant to transfer Greco to federal custody after his release by state officials. But this second report never appeared in the district court's docket until the Probation Office tried to add it during the course of this appeal. Greco insists that the Probation Office never actually submitted the report at the appropriate time.

Judge Pallmeyer was serving as the emergency district judge. She approved the warrant on March 9, the same day the Probation Office says it submitted the second report. That was a Friday. But because of a clerical mistake, the warrant didn't issue until March 12, the following Monday—a month to the day before Greco's first term of supervised release would have expired.

Because of several delays, the court did not hold a revo-
cation hearing until November. By that point Judge Leinen-
weber was presiding, and he found that Greco had broken a
term of his supervised release by violating the protective
order. The judge imposed 16 months of imprisonment plus
24 months of supervised release.

The judge also added several new conditions to the sec-
ond term of supervised release, two of which are at issue
here. The first condition says: "[I]f the probation officer
determines that [Greco] pose[s] a risk to another person
(including an organization or members of the community),
the probation officer may require [him] to tell the person
about the risk." Greco argues on appeal that this condition is
unconstitutionally vague, that it unlawfully delegates judi-
cial sentencing authority to someone other than an Article III
judge, and that it violates his First Amendment rights. The
government agrees that at least some of the language is
impermissibly vague and we should remand for clarifica-
tion. The second condition bars Greco from contacting five
individuals: the second ex-girlfriend, the two people she
lived with, and the two friends Greco notified about the
threatening messages. Greco didn't object to this condition
below, but on appeal he argues that the judge failed to
explain why he barred him from contacting four individuals
in addition to the ex-girlfriend.

## II. Discussion

We review de novo whether the district court had juris-
diction to hold a revocation hearing. *See United States v.
Maranda*, 761 F.3d 689, 693 (7th Cir. 2014). We also review de
novo the adequacy of a district court's explanation for a
condition of supervised release. *See United States v. Poulin*,

809 F.3d 924, 930 (7th Cir. 2016). When a defendant challenges the substance of the condition, we review for abuse of discretion. *See United States v. Speed*, 811 F.3d 854, 858 (7th Cir. 2016).

## A. The district court had jurisdiction to revoke Greco's release and to impose additional prison time.

By the time the district court revoked Greco's supervised release and imposed a new term of imprisonment, seven months had passed since the expiration of his original term of supervised release. The supervised-release statute allows district courts to hold delayed hearings, but only in limited circumstances:

> The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and … a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration *if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation*.

18 U.S.C. § 3583(i) (emphasis added). We have held that § 3583(i)'s warrant requirement "goes to the district court's subject-matter jurisdiction." *Maranda*, 761 F.3d at 693.

No one disputes that the court issued a warrant on March 12, exactly one month prior to the expiration of Greco's term of supervised release. Nonetheless, Greco

argues that the court lacked jurisdiction because that war-
rant was not supported by probable cause.

As we said in *United States v. Block* a few weeks after oral
argument in this case, "we and other courts have at least
suggested there is no need" in the § 3583(i) context "for strict
compliance with the … constitutional requirements for arrest
warrants." 927 F.3d 978, 983 (7th Cir. 2019) (collecting
sources). There we didn't have to articulate exactly what the
statute *does* require because the government never obtained
any formal court order. *See id.* at 984 (holding only that the
statute at the very least requires "formal documents notify-
ing the releasee of the proceedings and requiring him to
appear, either under threat of contempt with a summons or
by force with a warrant"). While the exact requirements
remain unsettled, we have no need to go further here. Even
if we assume probable cause is a jurisdictional requirement
under § 3583(i), the warrant was still perfectly valid.

According to the government, the Probation Office in-
formed the court on March 9 that Greco had been arrested
for violating a protective order. That, in turn, meant he had
violated a term of his supervised release—which everyone
agrees is enough to establish probable cause for his arrest.
The only question is whether the Probation Office submitted
the report in the first place.

As Greco has observed, the March 9 report wasn't added
to the lower court's docket until this appeal was already
pending. Prior to oral argument, we issued an order constru-
ing the government's brief as a motion to correct the record
on appeal under Rule 10(e) of the Federal Rules of Appellate
Procedure. We simultaneously granted that motion and
ordered the district court to certify and forward a supple-

mental record that included the March 9 report. But we asked the parties to be prepared to discuss at oral argument whether we should reconsider that order.

After full review of the matter, we see no reason to reverse course from our preliminary ruling. To start, Rule 10(e)(1) says: "If any difference arises about whether the record truly discloses what occurred in the district court, the difference must be submitted to and settled by that court and the record conformed accordingly." After the Probation Office's belated addition of the March 9 report to the lower court's docket, Greco moved to strike the document from the record. Judge Leinenweber held a hearing in which the parties discussed whether the report was in fact submitted to the court on March 9. At the end of that hearing, the judge denied the motion. Because the matter was "settled by that court," we may consider the report on appeal.

Even if the district court hadn't already considered the issue, we have the authority to independently correct the record in cases like this. Rule 10(e)(2) says: "If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded … by the court of appeals." That squarely applies here. The record is clear—even despite the docketing confusion—that Judge Pallmeyer did in fact consider the March 9 report when approving the warrant. During a detention hearing the following week, she and a probation officer referred to an "arrest report" that was filed the previous week that had notified the court of Greco's threatening messages. That was an unmistakable reference to the March 9 report, the only report to actually mention the

Facebook posts. Moments later Judge Pallmeyer explained that on March 9 she had "been asked … to issue a warrant to be lodged as a detainer." That too was clearly a reference to the March 9 report, the only report to actually request a warrant. Because Judge Pallmeyer considered the report, it is plainly material. The remaining question is whether the report was omitted by error or accident. The government says that the Probation Office's failure to docket the report was purely inadvertent, and Greco has never seriously disputed that point. Because the report is material and was omitted by accident, our preliminary decision to correct the record under Rule 10(e)(2) was sound. And with the complete record before us, there is no question that the facts considered by Judge Pallmeyer established probable cause.

At this point Greco shifts gears and argues that we should ignore Judge Pallmeyer's order altogether. He starts by noting that only a warrant or a summons can extend a court's jurisdiction under § 3583(i). And because no warrant or summons was issued on March 9, Greco argues that Judge Pallmeyer's March 9 order did nothing, standing alone, to extend the timeframe in which the court could hold a revocation hearing. He says the order is therefore irrelevant. The problem with that argument is that the clerk's office issued the warrant only three days later—a full month before Greco's term of supervised release would have ended. Whether or not Judge Pallmeyer's order extended the timeframe, the warrant *pursuant to* that order was still timely.

In response Greco insists the warrant *wasn't* issued pursuant to Judge Pallmeyer's order. He says that Judge Leinenweber made an independent decision to issue the warrant the following Monday. And according to Greco, that

means Judge Leinenweber was required to make an independent probable-cause finding. But Judge Pallmeyer's order, and hers alone, is attached to the warrant, and nothing in the record suggests that Judge Leinenweber played anything more than an administrative role in approving it. At oral argument Greco assured us that we would find Judge Leinenweber's signature on the copy of the warrant docketed on March 12, 2018. But the only signature we found is that of a clerk's office representative. Judge Leinenweber's name appears nowhere on that document, nor on any of its attachments. Judge Leinenweber was, of course, the presiding judge for most of the proceedings in this case, and it may be true that he played an administrative role in issuing this warrant. But because the warrant issued pursuant to Judge Pallmeyer's order, it is her reasoning that matters. And because the March 9 report was before her, the warrant she issued was clearly supported by probable cause. The court therefore had jurisdiction.

**B. The judge should clarify the two supervised-release conditions at issue.**

Greco challenges two of the new conditions Judge Leinenweber imposed on the second term of supervised release. The first authorizes the Probation Office to require that Greco notify third parties of any risks it finds he might pose. Both parties agree that this condition is likely unconstitutionally vague under circuit precedent. In particular they point to *United States v. Bickart*, 825 F.3d 832, 841–42 (7th Cir. 2016), where we held that a similar condition was impermissibly vague because, among other things, it did not define the term "risks." Because all parties agree, we remand so the judge can recast the condition in more concrete terms. More

specifically, the judge should provide more guidance on what types of risk trigger the notification requirement.

Greco also argues that this condition violates his First Amendment rights and delegates judicial sentencing authority to someone other than a judge. Because we're remanding for the judge to rewrite the condition in more specific terms, we need not address whether the original version was infirm on other grounds.

Next, Greco challenges the condition barring him from contacting five individuals. He concedes that it was appropriate to prohibit contact with the ex-girlfriend, but he maintains there was no basis to include the two members of her household and the two friends. He focuses on the adequacy of the judge's explanation for imposing the broader condition.

When a district court imposes a term of supervised release, it "must justify the conditions … by an adequate statement of reasons, reasonably related to the" factors listed in 18 U.S.C. § 3553(a). *United States v. Kappes*, 782 F.3d 828, 845 (7th Cir. 2015). Still, the judge "need not address every factor in checklist fashion, explicitly articulating [his] conclusions regarding each one," nor does he need to "give a speech about each condition." *Id.* at 845–46 (quotation marks omitted). But "rarely, if ever, should [he] list a multitude of conditions without discussion." *Id.* at 846.

Here, the judge gave no explanation for expanding the no-contact condition beyond the ex-girlfriend. The government asked that he include all five; the judge did no more than say he agreed. At least some explanation is required, so that was an error.

That said, Greco failed to timely object to this condition. The government does not argue waiver, *see United States v. Flores*, 929 F.3d 443, 447–50 (7th Cir. 2019), so the objection was merely forfeited and we review for plain error, *United States v. Corona-Gonzalez*, 628 F.3d 336, 340 (7th Cir. 2010). That's a difficult standard for Greco to meet. Not only does he have to show that the judge clearly erred, he must also show that "the error affected his substantial rights" and "seriously impugned the judicial proceeding's fairness, integrity, or public reputation." *United States v. Turner*, 651 F.3d 743, 748 (7th Cir. 2011). Here, the inadequate explanation likely did nothing to affect Greco's substantial rights or impugn the integrity of the proceedings. After all, the explanation is relatively clear: Greco threatened to blow up the house where two of the individuals lived, and he used the other two as intermediaries to convey threats to his ex-girlfriend.

Nonetheless, because the judge did not make his reasons explicit and the government has already asked for a partial remand, we also vacate and remand this second condition. If the judge reimposes the same condition, he should explain his reasons for doing so.

We AFFIRM in part, VACATE in part, and REMAND for proceedings consistent with this opinion.